IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* James Cunningham, Plaintiff, | ) | |
| v. | ) | CASE NO. 1:19-CV-320-WKW [WO] |
| ARMY FLEET SUPPORT, LLC, and L-3 COMMUNICATIONS CORP., Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Motion to Dismiss. (Doc. # 32.) Defendants argue that the claims in Plaintiff's *qui tam* complaint, brought under the False Claims Act, are subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure because they fail to properly state a claim in accordance with the heightened pleading standards of Rule 9(b). For the reasons stated below, Defendants are correct. However, their motion will be denied in favor of allowing Relator an opportunity to amend.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 31 U.S.C. § 3730(b)(1) and 31 U.S.C. § 3732. The parties do not contest personal jurisdiction or venue.

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). Rule 12(b)(6) review also includes consideration of any exhibits attached to the complaint. *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Instead of the typical pleading standard of Rule 8, however, a claim under the False Claims Act must meet the heightened pleading standard of Rule 9(b). *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *United States ex rel. Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) ("A complaint under the False Claims Act must meet the

heightened pleading standard of Rule 9(b) . . . ."). To satisfy Rule 9(b), the complaint "must include facts as to time, place, and substance of the defendant's alleged fraud," specifically "the details of the . . . allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567–68 (11th Cir. 1994).

## III. FACTS AS ALLEGED

Relator James Cunningham worked for Defendants Army Fleet Support, LLC, and L-3 Communications Corp. for thirteen years.[1] (Doc. # 1 at 3.) Defendants provided helicopter maintenance services to the United States Army at Fort Rucker, Alabama. (Doc. # 1 at 3.) The relevant contract required Defendants to perform the helicopter maintenance in accordance with various specifications, including those found in Technical Manuals (TMs), Maintenance Engineering Calls (MECs), Maintenance Engineering Orders (MEOs), Federal Aviation Regulations (FARs) and Army Regulations (ARs).

The most relevant specifications for maintenance can be found in the Interactive Electronic Technical Manual ("IETM") for the AH-64 "Apache" helicopter. Army aircraft are required to be cleaned every thirty days, and the IETM

[1] Army Fleet Support, LLC, has since changed its name to Army Sustainment, LLC, and has been sold to another organization. (Doc. # 33 at 1 n.1.) Proceeding against the predecessors in interest for purposes of this order is authorized by Rule 25(c) of the Federal Rules of Civil Procedure and does not prejudice any party.

delineates the requirements for rinsing, washing, inspecting for and repairing corrosion, and re-applying corrosion preventative compounds (CPC) on thirty-eight different components of the Apache helicopter. (Doc. # 1 at 4.) The amount of time needed for a six- to eight-person crew to complete the tasks in the IETM is approximately eight hours. (Doc. # 1 at 5.) However, the IETM mandates additional tasks for aircraft that fly in certain climates, including tropical, coastal, or desert climates. The Apache helicopters at Fort Rucker often fly to coastal areas of the Gulf of Mexico to the south, requiring extra maintenance in additional areas of the aircraft. (Doc. # 1 at 5.)

In June of 2016, Relator James Cunningham was promoted to lead Aircraft Maintenance Inspector for his shift. Relator reviewed the IETM to familiarize himself with the washing and maintenance requirements for the Apache helicopter. Relator informed his supervisor that Defendants were not in compliance with the current IETM. Relator indicated that the current tools and supplies were insufficient to properly wash the aircraft and take anti-corrosion measures. Relator complained that the men on his shift had not been properly washing or inspecting the aircraft for corrosion and had not been using the appropriate equipment and supplies. (Doc. # 1 at 6.) Cleaning crews regularly skipped tasks or substituted less effective methods for the methods mandated by the IETM. (Doc. # 1 at 7.) Between fifteen to twenty-five percent of the washing and inspection tasks were left incomplete. (Doc. # 1 at

7.) The deficiencies had existed for at least six months before Relator took charge of the crew according to the checklists completed by the maintenance technicians. (Doc. # 1 at 7.)

Relator also informed Defendants that three to five men on his crew were not qualified to perform maintenance washes and inspections because those men were service attendants, and not maintenance technicians as required under the IETM. (Doc. # 1 at 8.)

Nonetheless, Relator was told that his team was expected to wash two aircraft per shift, when proper following of IETM procedures would not allow for more than one aircraft to be washed per shift. (Doc. # 1 at 6.) Relator was told that certain tasks could be skipped because Defendants had received permission to deviate from the IETM, but Defendants refused to show proof of the permission to Relator. Additionally, other individuals who worked for Defendants and who would have known about any authorized deviations reported that no such permission was known. (Doc. # 1 at 8.)

When Relator again asked Defendants for proof of permission to deviate, he was threatened with termination. Relator said that he would have to mark the inspections and washes as incomplete unless he had proof that he was allowed to deviate from the IETM. In August 2016—the following month—Relator received an unfavorable performance evaluation for the first time as a lead Aircraft

Maintenance Inspector. (Doc. # 1 at 9–10.) In September 2016, Relator was demoted from lead Aircraft Maintenance Inspector to a regular technician position. (Doc. # 1 at 11.) Roughly a week later, Relator was fired. (Doc. # 1 at 11.)

The Complaint alleges that Defendants billed the United States for the wash and inspection of helicopters every month from December 2015 to September 2016, "certifying—expressly or implicitly—that the washes and inspections were performed in accordance with the . . . contract and the IETM." (Doc. # 1 at 23.) The Complaint brings one count for presentation of false claims, one count for making or using a false record or statement to cause claims to be paid, one count for retaining overpayments, and one count for retaliation. (Doc. # 1 at 24–31.)

**IV. DISCUSSION**

The False Claims Act, 31 U.S.C. § 3729 *et seq.*, "makes it unlawful to knowingly submit a fraudulent claim to the government." *United States ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 840 (3d Cir. 2014). "The *qui tam* provision of the False Claims Act . . . permits, in certain circumstances, suits by private parties on behalf of the United States against anyone submitting a false claim to the Government." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 941 (1997).

The key element of a False Claims Act is "knowingly ask[ing] the Government to pay amounts it does not owe." *United States ex rel. Clausen v. Lab'y*

*Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002). Thus, the Eleventh Circuit has held that Rule 9(b) requires a False Claims Act complaint to identify "specific claims that were submitted to the United States [and] identify the dates on which those claims were presented to the government." *Id.*; *see also United States ex rel. Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1109 (11th Cir. 2020). The Eleventh Circuit has rejected a complaint that contained the mere conclusory allegation that a claim was presented on the "date of service or within a few days thereafter." *Clausen*, 290 F.3d at 1311. "[W]hen Rule 9(b) applies, 'pleadings generally cannot be based on information and belief.'" *Id.* (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1040, 1052 (S.D. Ga. 1990)).[2]

Although Relator identifies the months in which he believes false claims were submitted, he fails to identify the specific dates on which the false claims were submitted. In *Clausen*, the Relator presented a date range of just a "few days," but the Eleventh Circuit held that the complaint was not particular enough. *Id.* Plaintiff's Complaint needs to specify particular dates in order to survive.

[2] There is a possible exception to this rule if the plaintiff alleges, with supporting facts, that the information lies peculiarly within the defendant's control. *See Stinson, Lyons, Gerlin & Bustamante, P.A.*, 755 F. Supp. at 1052. Plaintiff did not do so here. At least some of the missing facts are likely within the equal control of the United States, and Defendants have further asserted that the submitted claims are public information. (Doc. # 33 at 10.)

Alternatively, Defendants argue that the Complaint fails to allege enough particularities regarding the *form* of the claim. For Relator's implied certification claim, he needs to allege that the claim made "specific representations about the goods or services provided, but knowingly fail[ed] to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 181 (2016). Defendants submit an example voucher form used in their claims process and argue, citing various non-binding cases, that the form contains no representation of the services rendered. (Doc. # 33 at 9–10.) Defendants ask that their exhibits be considered at the motion to dismiss stage as being incorporated by reference into the complaint. (Doc. # 33 at 5 n.3.)

Defendants are correct that general claims made without identifying the services performed cannot be the basis of this particular kind of False Claims Act claim. *See United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 332 (9th Cir. 2017). However, Defendants' exhibits demonstrate that their line of reasoning is inapplicable here. The exhibits show continuation sheets, which appear to list line items for the individual services performed. (Doc. # 33-2 at 3–6.) Defendants state that "Relator cannot even identify which of the line items on the continuation sheets represents the maintenance services he alleges were improperly performed" (Doc. # 42 at 8–9), which confirms that the line items represent a summary of maintenance

services performed. While the claim certainly needs to "do more than merely demand payment," *Escobar*, 579 U.S. at 188, the listing of item codes is exactly what the Supreme Court has required:

> [B]y submitting claims for payment using payment codes that corresponded to specific counseling services, Universal Health represented that it had provided individual therapy, family therapy, preventive medication counseling, and other types of treatment. Moreover, Arbour staff members allegedly made further representations in submitting Medicaid reimbursement claims by using National Provider Identification numbers corresponding to specific job titles. And these representations were clearly misleading in context. Anyone informed that a social worker at a Massachusetts mental health clinic provided a teenage patient with individual counseling services would probably—but wrongly—conclude that the clinic had complied with core Massachusetts Medicaid requirements (1) that a counselor "treating children [is] required to have specialized training and experience in children's services," and also (2) that, at a minimum, the social worker possesses the prescribed qualifications for the job. By using payment and other codes that conveyed this information without disclosing Arbour's many violations of basic staff and licensing requirements for mental health facilities, Universal Health's claims constituted misrepresentations.

*Id.* at 189–90 (citations omitted).

The real issue is that Relator does not allege with particularity which item codes were specifically listed on the vouchers submitted in the months from December 2015 to September 2016 and what services those item codes represented. Without these specific allegations, Relator cannot state with particularity a False Claims Act case in compliance with *Escobar*.

"[W]hile an insider might have an easier time obtaining information about billing practices and meeting the pleading requirements under the False Claims Act, neither the Federal Rules nor the Act offer any special leniency under these particular circumstances to justify [a Relator in] failing to allege with the required specificity the circumstances of the fraudulent conduct he asserts in his action." *Clausen*, 290 F.3d at 1314. Under Supreme Court and Eleventh Circuit precedent, more details are needed regarding the actual claims submitted by Defendants in order to state a claim under Rule 9(b) and the False Claims Act.

Relator argues that leave to amend should be granted in the event that his claim is found to be lacking in particularity. (Doc. # 41 at 21–23.) "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Generally, 'where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)) (alterations adopted).

Defendants argue that amendment would be futile. (Doc. # 33 at 14.) However, they also claim that the missing forms, which would contain all the information needed for Relator to cure his deficiencies, are public records. (Doc. # 33 at 10.) Leave to amend would not be futile if it affords Relator an opportunity to

include more information that (1) would cure the deficiencies in the complaint and (2) is known to be available to him. No better situation for amendment can be contemplated.

## V. CONCLUSION

For the reasons stated above, it is ORDERED that Relator is granted leave to amend his Complaint **on or before March 1, 2022**. Defendants' Motion to Dismiss (Doc. # 32) is DENIED.

DONE this 24th day of January, 2022.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE